Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 808 | **DATE** | 12/18/2000 |
| **CASE TITLE** | RUSSELL vs. CHICAGO SCHOOL REFORM BOARD OF TRUSTEES | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant's motion for summary judgment is granted. This action is dismissed in its entirety. All other pending motions are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | DEC 19 2000 | 47 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 00 DEC 19 AM 7:39 | |
| JS | courtroom deputy's initials | 12/18/2000 date mailed notice | |
| | | JS mailing deputy initials | |
| | | Date/time received in central Clerk's Office | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUCILLE RUSSELL | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CHICAGO SCHOOL REFORM | ) No. 00 CV 808 |
| BOARD OF TRUSTEES, | ) |
| | ) |
| Defendant. | ) |

**DOCKETED**
DEC 1 9 2000

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Pro se plaintiff Lucille Russell ("Russell") filed a second amended complaint under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII") against defendant Chicago School Reform Board of Trustees ("Board") seeking injunctive relief and damages. The Board filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Russell's response to defendant's motion does not meet the standards set forth in Local Rule 56.1(b)(3)(A) and (B). Despite this failure, this court accepts Russell's response as it stands and will consider her response in the evaluation of this motion. Having considered the matter fully, for the reasons stated herein, the Board's motion for summary judgment is GRANTED.

1

49

## PROCEDURAL BACKGROUND

On February 9, 2000, Russell filed her first complaint, pro se, setting forth two counts for relief. Count I alleged sex discrimination against the Board in violation of Title VII and Count II alleged employer retaliation against the Board in violation of Title VII. On March 23, 2000, the Board filed a motion to dismiss Count I of the complaint. Russell was to respond to the Board's motion by April 28, 2000. On April 28th, Russell failed to file a response. On May 3, 2000, the court extended the time for Russell to respond sua sponte until May 19, 2000 and admonished Russell as to the consequences of not filing a response. On May 19, 2000, Russell failed to file a response to the Board's motion to dismiss. On June 6, 2000, this court granted the Board's motion to dismiss Count I on the complaint. On July 27, 2000, this court granted Russell's motion for leave to file a second amended complaint. Additionally, this court allowed the Board until August 10, 2000, to file a motion to dismiss the second amended complaint and gave Russell until August 17, 2000, to respond. On August 10, 2000, the Board filed a motion to dismiss the second amended complaint in its entirety. Russell failed to file a response to the Board's motion by August, 17th. On August, 18, 2000, the court, sua sponte, gave Russell an extension of time to September 1, 2000, to file a response to the Board's motion to dismiss, and the court again admonished Russell as to the consequences of failure to respond. On September 1, 2000, Russell filed a response to the Board's motion to dismiss, and on September 9, 2000, the court denied the Board's motion to dismiss.

On October 31, 2000, the Board filed this motion for summary judgment. Russell was to respond to this motion by November, 14, 2000. On November 3, 2000, sua sponte, the court advised all parties of Federal Rule of Civil Procedure 56, Local Rules 56.1 and 56.2, and urged both parties to adhere strictly to its mandates and requirements. The court stated that a failure to comply with

these rules would result in an admission by one party to all factual assertions presented by the opposing party. A copy of the rules were sent to both parties. Sua sponte Russell was given an extension of time until November 21, 2000 to file an appropriate response to the Board's motion for summary judgment and the Board's 56.1(a) statement of uncontested facts. On November 13, 2000, Russell filed a motion for an enlargement of time to file her response to this motion for summary judgment. On November 16, 2000, this court granted Russell's motion and gave Russell until November 28, 2000 to file a response to the Board's motion. On November 28, 2000, Russell filed a response to this motion for summary judgment.

## STATEMENT OF FACTS[1]

A. Russell's employment at George Curtis Elementary School

George Curtis Elementary School ("Curtis") is a Chicago public school operated by the Board. Lester R. Gaines ("Gaines") is the principal of Curtis and was the principal at all times relevant to this complaint. When Gaines took over as principal of Curtis in September, 1995, Russell was a regular teacher at Curtis and taught special education to children between the ages of eight and eleven. When Gaines took over as principal of Curtis, Gaines understood from the previous principal Dr. Carolyn McGee that Russell had a history of excessive absences. From the period September 5, 1995, through September 29, 1995, Russell was tardy nine days and absent five days. Based on these excessive tardies and absences Gaines contacted Lynn St. James, the Board's

---

[1] The following facts are undisputed and are from the defendant's Local Rule 56.1(a) statement of material facts and accompanying exhibits. As explained fully later in this opinion, plaintiff's submissions are deficient but have been accepted and considered by the court in determining this matter. Defendant's facts, however, are accepted as true pursuant to Local Rule 56.1(b)(3)(B).

3

Chief Executive Officer, to request that disciplinary action be taken against Russell. On September 11, 1995, St. James began disciplinary actions against Russell for excessive tardiness, insubordination, and repeatedly leaving her students unattended. On September 14, 1995, Gaines received a letter from Ms. Jacqueline A. Baker, the Acting Director of the Board's Bureau of Labor and Employee Relations, indicating that she was taking disciplinary action against Russell. On December 7, 1995, Gaines wrote Russell a memorandum documenting specific concerns he had with her job performance. Gaines identified the following deficiencies: excessive absences, failure to attend parent conferences, leaving students unsupervised, and failure to follow directives. On December 20, 1995, the Board adopted Warning Resolution #95-1220-Ex12., which identified deficiencies in Russell's work performance including, insubordination, allowing unauthorized visitors in her classroom, and repeatedly leaving her students unattended. Based on Russell's misconduct, the Board imposed a twenty school day suspension without pay.

During the 1998-1999 school year, from October 16, 1998 through December 13, 1998, Russell did not report to work. Sometime in October, 1998, Russell called Gaines from South Africa to inform him that she had been in a car accident. Gaines did not approve a leave of absence for Russell to travel to South Africa. On December 14, 1998, Russell reported back to work and informed Gaines again that she had been in a car accident in South Africa and that she would provide him with a doctor's statement verifying her injuries. On January 11, 1999, Gaines issued Russell a memorandum documenting that she had been absent thirty-one days and informed her that disciplinary action could be taken against her if her absences continued.

On January 25, 1999, Gaines met with Russell to discuss deficiencies in the report cards she submitted. Gaines also provided her with a memorandum identifying the specific deficiencies.

4

Russell informed Gaines at that time that she was not going to correct her report cards. On January 27, 1999, Russell submitted to Gaines an insurance claim statement from her injuries in South Africa. Gaines informed Russell that he could not sign the statement because she had not provided him with a doctor's statement verifying her injuries. On January 29, 1998, Gaines provided Russell with a detailed description of the deficiencies in her report cards. Russell again refused to correct her report cards.

On February 3, 1999, Gaines advised Russell that her failure to comply with his directives regarding the proper completion of her report cards would result in disciplinary actions. On February 17, 1999, Gaines issued Russell a memorandum directing her to provide him an original physician's statement indicating how long she was under her doctor's care by February 22, 1999. On February 19, 1999, a hearing was conducted regarding Russell's failure to follow Gaines' directives regarding her report cards and lesson plans. After the hearing, Gaines advised Russell that based on her failure to follow his directives, he was suspending her for five days without pay.

On March 18, 1999, Timothy D. Brandhorst, the Director of the Board's Bureau of Labor and Employee Relations, issued a letter to Russell informing her that her five day suspension had been upheld. On March 25, 1999, at Gaines' direction, Shirley Chapman, assistant principal, went to Russell's classroom to return her report cards and to provide another memorandum directing Russell to provide to Gaines with a doctor's note specifying the time period she was under his care. Russell refused the memorandum. On April 6, 1999, Gaines reissued the memorandum to Russell and served Russell with a Notice of Pre-Discipline Hearing. The grounds for the discipline hearing were repeated insubordination and excessive absences without documentation.

On April 13, 1999, a discipline hearing was held. After the hearing, Russell received a

warning resolution from the Board and a ten day suspension without pay. Sometime after May 6, 1999, Russell finally provided Gaines with a doctor's statement. On that same day, Gaines issued Russell with a memorandum detailing specific problems with the report cards she submitted. On June 15, 1999, Russell returned to Gaines the reports cards with the same deficiencies as before and refused to properly complete the report cards. Russell was the only teacher in the school who failed to properly complete her students' report cards. The report cards were sent out with the deficiencies because the school year was ending. On August 20, 1999, Russell's ten day suspension was upheld by the Director of Bureau of Labor and Employee Relations.

During the 1999-2000 school year, from September 8, 1999, through October 19, 1999, Gaines documented numerous instances of Russell's improper conduct including tardiness, absences from meetings, inappropriate conduct, and failure to follow directives. On October 28, 1999, Gaines served on Russell a Notice of Pre-Disciplinary Hearing. On November 5, 1999, a disciplinary hearing was held regarding Russell's repeated acts of misconduct. After the hearing, Gaines issued Russell a fifteen day suspension without pay. On November 17, 1999, the Board adopted a Warning Resolution against Russell enumerating her job deficiencies. According to the Resolution, Russell's failure to correct her deficiencies would result in her dismissal.

On January 21, 2000, Russell sought review of her fifteen day suspension. On January 26, 2000 the appeals hearing was held. Additionally on that day, Russell turned in report cards that were still complete according to the circulated rules concerning report cards. Hearing Officer Thomas M. Owens issued a decision regarding Russell's appeal upholding the fifteen day suspension. Russell was suspended from February 7, 2000, to March 1, 2000.

On April 26, 2000, Gaines passed Russell in the main office. As he walked into the hallway,

he observed Russell's students standing there unsupervised. Gaines returned to the office and advised Russell that her students with in the hallway unsupervised. Gaines directed Russell to take her students back to her classroom. Russell refused Gaines' directions. Gaines had an assistant return the students to Russell's classroom, and at that time Russell called the police to have Gaines arrested for harassment. Gaines immediately called Shanye Garmony-Miller, the Regional Education Officer. Within minutes Diana Scatton, district administrator, returned the call and Gaines appraised her of the situation. Scatton asked to speak to Russell and directed Russell back to her classroom. Russell refused. At that moment, two Chicago police officers arrived at the school. Russell refused to speak to the "peon" officers and requested to speak to a supervisor. Shortly thereafter, two higher level officers arrived. Russell spoke with those officers and the officers advised Russell to follow Gaines' directives. Russell refused. Russell was then directed to leave school grounds. Russell returned to her classroom. Gaines prepared a memorandum instructing Russell to leave school ground immediately and informing Russell that she would be paid for the day. Effective June 2, 2000, Russell was suspended without pay.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether

there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

As stated earlier, Russell, despite being fully appraised of her obligations, failed to file a proper response to defendant's motion for summary judgment. Local Rule 56.1(b) states that a party opposing a motion filed pursuant to Fed.R.Civ.P. 56 shall file opposing affidavits, a supporting memorandum of law, and a concise response to each numbered paragraph of the movant's Local Rule 56.1(a) statement of uncontested facts. See LR56.1(b). Russell filed instead only what is labeled "Plaintiff's Answer to Motion For Summary Judgment." This document is a lengthy biography of various communications, and correspondence which details Russell's career at Curtis. Russell's response is nothing more than a multi-page narrative by Russell where she espouses her opinions, beliefs, and understandings about matters not necessarily pertinent to this case. This document does not address the legal issues of this case. Russell did not file a memorandum of law in support of her position.

Rule 56 of the Federal Rules of Civil Procedure does not authorize the granting of summary judgment as a sanction for failing to file a proper response to a motion for summary judgment. See Tobey v. Extel/JWP, Inc., 985 F.2d 330, 332 (7th Cir. 1993). Rule 56(e) permits summary judgment only "if appropriate - that is, if the motion demonstrates that there is no genuine issue of material fact

and that the movant is entitled to judgment as a matter of law." Id. This is not to say, however, that Russell's derelictions are not without cost. By failing to file a proper Local Rule 56.1(b) statement, Russell admits, in effect, to all factual assertions presented by the defendants. See Local Rule 56.1(b)(3)(B); Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 689 (7th Cir. Aug. 22, 2000) (accepting as true all material facts set out in Local Rule 56.1(a) statement, where non-moving party has failed to comply with Local Rule 56.1(b)). As a result, this court must determine whether summary judgment is proper as a matter of law by reviewing the record and the facts as presented by the Board and by drawing all justifiable inferences in favor of Russell. See Wienco, Inc. v. Katahn Associates, Inc., 965 F.2d 565, 568 (7th Cir. 1992).

ANALYSIS

I. Notice to Pro Se Litigant Russell

The Federal Rules of Civil Procedure forbid a district court from acting on a summary judgment motion without giving the nonmoving party a reasonable opportunity to appropriately respond. Fed. R. Civ. P. 56. A motion for summary judgment should not be granted against a pro se litigant unless the pro se litigant receives clear notice of the need to file affidavits or other responsive materials and of the consequences of not responding. See Timms v. Frank, 953 F.2d 281, 284 (7th Cir. 1992). The United States Court of Appeals for the Seventh Circuit explains that this notice should come from opposing counsel and should include a short, plain statement of the need to respond to a summary judgment motion, giving both the text of Federal Rule of Civil Procedure 56(e) and an explanation of the rule in ordinary English. Id. If opposing counsel fails to provide the requisite notice then the district court should do so. Id.

In this case, Russell was not represented by counsel when the Board filed this motion for

summary judgment. Therefore, counsel for the Board had a duty to appraise Russell of her obligation to properly respond to this motion for summary judgment and if counsel neglected its duty then this court must advise Russell of the need to respond this motion. Throughout this litigation, this court has advised Russell again and again of the need to properly respond to motions filed against her. Concerning this motion for summary judgment, on November 3, 2000, sua sponte, the court advised all parties of Federal Rule of Civil Procedure 56, Local Rules 56.1 and 56.2, and urged both parties to adhere strictly to its mandates and requirements. The court stated that a failure to comply with these rules will result in an admission by one party to all factual assertions presented by the opposing party and a copy of the rules were sent to both parties. The record reveals that this court has been more than lenient in allowing Russell sufficient time to respond to this motion for summary judgment and admonished Russell of the consequences of not responding properly. Having satisfied the requirement of appropriate notice to pro se litigant Russell, this court now will consider the merits of defendant's motion for summary judgment.

II. Russell's Claim of Retaliation under Title VII

    A.    Elements of a Prima Facie Case

In order to establish a prima facie case for retaliation under Title VII, Russell must show that (1) she engaged in statutorily protected expression, (2) she suffered an adverse employment action, and (3) there is a casual link between the protected expression and the adverse action. See Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1457 (7th Cir. 1994). If she makes that showing, the burden of producing a legitimate nondiscriminatory reason for the adverse action shifts to the Board. Id. Once the Board produces those reasons, Russell bears the burden of showing that the Board's proffered reasons are pretext. Id; see, e.g., McDonnell Douglas Corp v. Green, 411 U.S. 792, 93

10

S.Ct. 1817 (1973). In this case, Russell fails to show an genuine dispute concerning the first element necessary to establish a prima facie case of retaliation under Title VII. Russell fails to show that she was engaged in statutorily protected expression and that she was in opposition to any of the Board's activities. Additionally, Russell fails to rebut the Board's legitimate, non-discriminatory reasons as to why she suffered an adverse employment action. As a result, summary judgment in favor of the Board is necessary as a matter of law.

B.    Russell was not engaged in expression protected by Statute

In order to satisfy the first element of a prima facie of retaliation under Title VII, Russell must demonstrate that she opposed some action of the Board's that she had a "reasonable belief" was in violation of Title VII. Pasqua v. Metropolitan Life Insurance Co., 101 F.3d 514, 518 (7th Cir. 1996). Title VII does not require that the challenged employment practice actually violate Title VII. Dey, 28 F.3d at 1457. Title VII does require that Russell establish that she stood opposition to some action by the Board and that she believed that action to violated Title VII.

It is clear from the record that Russell was not standing in opposition to any action of the Board that Russell believed violated Title VII. Russell claims in a letter that she wrote to Dr. Blondean Davis that she believed Gaines to be engaged in inappropriate conduct at the school. The letter accuses Gaines of misconduct including misuse of school funds, allowing a female subordinate to misuse school funds, giving favor to his alleged paramour, and other inappropriate conduct. Russell's letter does not establish that she thought Gaines was violating Title VII in his conduct. Russell's letter does not speak to any kind of discrimination based on sex, or race. The only action in Russell's letter that could possibly touch on a Title VII claim is the allegation that Gaines' personal relationship with a female subordinate resulted in a sexually offensive work environment.

11

However, Russell's letter does not establish how Gaines' favoritism to a third party alleged paramour constituted discrimination based on sex or race toward her nor does her letter establish how Gaines' alleged relationship created an offensive work environment. There are insufficient facts in this case to create a genuine issue of material fact that Russell was in opposition to any activity or direction of the Board that she believed violated Title VII. As to what was Russell's reasonable belief at the time in question, it seems from her letter that Russell believed that she was involved in a principal/faculty conflict. In looking at the facts and drawing all justifiable inferences in favor of Russell, Russell fails to establish a genuine dispute that she was involved in statutorily protected speech. Therefore, Russell fails to establish a prima facie case of retaliation and summary judgment in favor of the Board is appropriate.

C. The Board's Legitimate, Nondiscriminatory Reasons

Assuming, arguendo, that Russell has established a prima facie case of retaliation under Title VII, summary judgment in favor of the Board is still appropriate in this case because Russell fails to establish that the proffered reasons for her adverse employment action are a pretext for discrimination. Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1457 (7th Cir. 1994). If Russell establishes a prima facie case of retaliation under Title VII, the burden of producing a legitimate nondiscriminatory reason for the adverse action shifts to the Board. Dey, 28 F.3d 1446 at 1457. Once the Board produces those reasons, Russell bears the burden of showing that the Board's proffered reasons are pretext. Id. If Russell fails to carry her burden, summary judgment for the Board is necessary as a matter of law.

The record in this case clearly establishes several legitimate, nondiscriminatory reasons for Board's suspension of Russell. Additionally, the record adequately substantiates each reason that

the Board offers as cause for Russell's adverse employment action. Gaines began having problems with Russell's work performance from the time he took over as principal of Curtis in September, 1995. Russell's deficience included but were not limited to excessive absences, failure to attend parent conferences, leaving students unsupervised, failure to submitted proper report cards, failure to follow directions, gross insubordination. The record shows that Russell received ample notice of her performance deficiencies and has been the subject of numerous disciplinary hearings. The record in this case offers far more examples of Russell's deficiencies as an elementary school teacher than this court has the time or the inclination to recite at this time. Any of these failures separately, and all of these failures taken together establishes and substantiates legitimate, nondiscriminatory reasons for Russell's suspension. Russell offers nothing on the record to dispute her performance deficiencies, nor does Russell offer any evidence that the reasons provided by the Board are a pretext to discrimination. Russell fails to carry her burden necessary to establish a case of retaliation under Title VII. As result, summary judgment in favor of the Board is necessary as a matter of law.

## CONCLUSION

For the above stated reasons, the Board's motion for summary judgment is GRANTED. This case is dismissed with prejudice in its entirety. All pending motions are moot.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: December 18, 2000